STATE ex rel. WENTWORTH, Respondent, v. BAKER, MAYOR, et al., Appellants.

(No. 7,501.)

(Submitted December 9, 1935. Decided January 9, 1935.)

[53 Pac. (2d) 440.]

*Mr. Merle C. Groene,* for Respondent, submitted a brief and argued the cause orally.

*Mr. E. K. Cheadle,* for Appellants, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Lloyd I. Wentworth, a member of the fire department of the city of Lewistown for more than fifteen years and, for the

past four years, an "acting" member of the police force, was suspended from duty for a period of one year and after May 16, 1935, without pay, on charges preferred by the city attorney of Lewistown "by direction" of the mayor.

The charge preferred is that Wentworth received a pair of Chevrolet automobile wheels and tires from one Max Fukelman, who had stolen the property, well knowing that Fukelman was dependent upon charity for a living and had no means of honestly acquiring the property, "without any inquiry" as to the ownership of the property, and "failed to make any investigation as to the ownership of the same and the method of their acquisition by the said Fukelman, which as a reasonably honest man and officer he was required to make," and thereby became an accessory to the theft; that Wentworth disposed of the property and thus deprived the owner thereof; that his conduct was "unbecoming a member of the fire department  *  *  * and acting member of the Police Force,  *  *  *  and inconsistent with honesty and good conduct and with the duty which he owed to the people."

On July 13, 1935, on writ of *certiorari* issued by the district court of Fergus county, and after a hearing had, the order of suspension was "set aside and annulled" and the reinstatement of Wentworth was commanded. The mayor and city council appealed from the judgment on September 9, 1935, and thereafter, on October 17, 1935, while perfecting the appeal, the mayor filed a second charge against Wentworth, alleging directly that the officer feloniously broke into the "city garage" and stole the wheels and tires. On this charge a hearing was had and Wentworth was suspended for a period of two years from and after October 28, 1935, without pay.

The relator filed herein a motion to dismiss the appeal, supported by affidavit, on the grounds that, by reason of the second suspension order, the question here involved has become moot, and by the action of the mayor, he and the council are estopped from prosecuting the appeal.

The motion to dismiss is overruled for the following reasons: First, the question here presented is not moot because it involves the right of the relator to receive salary for the period from May 16 to October 28, and the liability of the city therefor. Second, while a party who, after judgment against him, prosecutes an inconsistent action on the same cause estops himself from appealing from the first judgment (3 C. J. 688), the second charge preferred is not necessarily inconsistent with the first, although based on the same transaction. We are not advised as to what new evidence may have been discovered leading the mayor to the conclusion that, in spite of the decision of the trial court with respect to the first order, a criminal action, in effect, would lie against the accused. The city is entitled to have this appeal considered for the purpose of determining its liability to the relator for the period above mentioned, if for no other purpose.

· In support of the judgment, the relator contends, first, that the written charge is insufficient to warrant suspension, as a fireman is subject to discipline only "for neglect of duty or a violation of any of the rules and regulations of the fire department." (Sec. 5111, Rev. Codes 1921.) The court held the charge sufficient and we have here no cross-appeal; so we need not consider this contention unless we later determine to do so in order to sustain the judgment on the theory that it is right although based on a wrong reason. (*Ebaugh* v. *Burns,* 65 Mont. 15, 210 Pac. 892.) The judgment is presumed to be correct and, therefore, the burden of showing reversible error rests on the party challenging it. (*State ex rel. Woare* v. *Board,* 70 Mont. 252, 225 Pac. 389.)

There is a mass of extraneous and immaterial matter in the return made on the writ and brought before us on appeal; this must be disregarded. (*State ex rel. Sell* v. *District Court,* 52 Mont. 457, 158 Pac. 1018.) The province of the district court was to ascertain whether the charges against the accused were or were not supported by the evidence, not to determine its preponderance. (*State ex rel. Griffiths* v. *Mayor,*

57 Mont. 368, 188 Pac. 367.) The court having determined that the evidence did not support the charge, we are called upon to determine whether or not the record contains some substantial evidence supporting the charge. "A charge without substance is no charge, and a finding without substantial evidence as its basis is no finding." (*Bailey* v. *Examining & Trial Board,* 42 Mont. 216, 112 Pac. 69, 70.) "Substantial evidence is such as will convince reasonable men and on which such men may not reasonably differ as to whether it establishes the plaintiff's case, and, if all reasonable men must conclude that the evidence does not establish such case, then it is not substantial evidence." (*Morton* v. *Mooney,* 97 Mont. 1, 33 Pac. (2d) 262, 265.)

A careful and painstaking search of the record made before the council, consisting of 143 typewritten pages, discloses only the following facts bearing on the charge: On February 6, 1934, a Chevrolet truck with two "dual" wheels in a box back of the cab, visible to anyone viewing the truck, was taken from three "hold-up men" and left for a day or two at the side of the police station; it was then placed in the "city warehouse," used by and in charge of the water department, where it remained for "several months." A year later an employee of the water department discovered that the "dual" wheels were missing and announced his discovery at "roll-call" of the police department. An investigation was instituted and the wheels, without wires, were found in the possession of a junk dealer, who stated that he traded a pair of tires to Wentworth for the wheels with tires mounted. The tires traded fitted a school bus operated by Wentworth, while the stolen tires did not. The trade was made and the wheels taken to the junk yard in the daytime. At this juncture Fukelman appeared before the chief of police and admitted that he had taken the wheels and placed them in the basement of Wentworth's garage, thinking that Wentworth could use them. He was taken to the county attorney's office where he made a sworn statement. Just prior to this time, Wentworth had

called on him to state where he had gotten the wheels. Asked by the county attorney whether he had told Wentworth, at the time he gave the wheels and tires to the accused, where he had obtained them, his answer was, "I don't remember." Asked if Wentworth knew where he had gotten them, he replied, "I don't know."

A police officer testified that, in March, 1935, Fukelman told him that Wentworth was owing him, Fukelman, some money and that when he got it out of Wentworth he would have nothing more to do with the accused.

Some evidence was adduced to the effect that Wentworth was in bad standing with the members of the police force, other than the chief, because of his refusal to sign a letter to the legislature concerning a bill pending, which letter was in conflict with one written by the chief.

The city attorney went to considerable length to prove each of the wheels, mounted, weighed 112½ pounds, evidently to convey the idea that Fukelman could not have carried them away, but no evidence was introduced as to Fukelman's size or strength.

The recovered wheels were turned over to Fukelman who painted them and turned them over to Wentworth; Wentworth purchased new tires and tubes, mounted them on the wheels, and delivered the wheels to the authorities.

Wentworth testified that he saw the truck at the time it was seized and saw the "dual" wheels in the box; that he never saw them thereafter to his knowledge; that he did not take, nor participate in taking, them from the warehouse. Max Fukelman is a local character living opposite the police station and with whom the police have always been "very friendly." According to the accused, Fukelman had never been in any serious trouble in Lewistown and always appeared to be "on the square." The accused testified that for some time Fukelman worked for one Joe Libin buying hides and junk, using an old car he had purchased from the "chief," but sold this car for $120 and turned the money over to the accused to keep for

him; later he bought another old car which the accused helped him to put in running condition and for which he paid by buying junk and hides, the amount not being mentioned, and continued in this business. The witness stated: "He always had a check book of the Lewistown Hide & Fur Company, and he still has it, so he can buy for them at any time."

In April or May, 1934, Wentworth needed a pair of tires for his school bus; he shopped around for second-hand tires. He testified: "Mox [Fukelman] told me, he said, 'I have got a couple of tires,' and I said, 'Where are they?'. and he said 'They are up there in your garage basement.' " He then explained that there was an outside entrance to this basement; that the two went up to see the tires and the accused said they were no good to him, but "Mox" suggested that he might trade them for suitable tires; that he then said, "Where did you get them?" the reply being, "I bought them at Stanford." The witness then testified that Fukelman had just brought "a load of stuff in from Stanford, or in that direction  *  *  *  , so I didn't doubt his word about it at all." About two weeks later, at about 2:30 P. M. on a school day, the accused took Ragenovich, the junk dealer, up to his house, rolled the wheels out for inspection, and, returning to the junk yard, made the trade for a pair of tires he could use. When the theft was discovered, Wentworth was called before the county attorney to whom he stated that he did not steal the tires, but "might be able to give him some information about them." The witness then went to the station where he found Fukelman and asked him where he got the tires, to which Fukelman again replied "at Stanford"; continuing, the witness said: "I told him I was accused of stealing some tires and that I wanted to know the truth, and then he told me he stole them out of the warehouse." The accused testified that he then told the county attorney that Fukelman stole the tires; that he purchased new tires with $38.44 of Fukelman's money, and still had $23 in his keeping; by arrangement between them he had been paying Fukelman $7 per month out of the fund in his hands.

Concerning this testimony, and in justification of the suspension of Wentworth, counsel in his brief argues: "This all shows an intimate association between Wentworth and Fukelman. Wentworth knew Fukelman's circumstances. He testified that he had helped him in various ways, indeed that he had kept him. He knew very well that Fukelman had no means to make him a gift of the value of these wheels and tires. Nevertheless he accepts them and trades them off without making any inquiry how Fukelman acquired them. He had seen the wheels and tires on the truck two or three months before the time he accepted them from Fukelman and traded them to Ragenovich. All this is undisputed. It rests upon Wentworth's own testimony. It reveals at least a degree of carelessness in accepting and handling stolen goods without due inquiry. That justifies the council in finding him guilty of conduct unbecoming an officer and suspending him from duty for one year."

We quote the argument in full, as it clearly demonstrates the position of the prosecution. Without passing on the sufficiency of the showing to warrant the council's action, if the statements made were all justified by the evidence and "all this is undisputed," let us analyze those portions of the statement said to prove the receiving of stolen goods "without inquiry." "Wentworth's own testimony," which is undisputed, is that he did inquire of Fukelman as to where he got the property and received a reply which, from the circumstances related, he had no reason to doubt "at all." Wentworth gave a plausible explanation of Fukelman's "means to make him a gift," which, on the statement made above, might well have been made from a sense of gratitude. It is true that Wentworth saw the wheels and tires in the truck "two or three months before he accepted them from Fukelman," but the record discloses no identifying marks, no minute examination, or the taking of the numbers on the tires. There are, perhaps, scores of like wheels and tires in use in Fergus county. What "reasonable man" can say that one who casually inspects a pair of wheels with tires mounted should "two or three months" later recognize those offered

to him under circumstances which do not arouse his suspicion, and when he has no reason to believe that the ones he inspected are not still under lock and key and in the custody of the police department, as those he originally inspected?

The record discloses no substantial evidence warranting the council's findings of misconduct. The judgment is affirmed.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.