LEO KYSER, Plaintiff and Respondent v. HAROLD L. HIE-
BERT, MYRTLE R. HIEBERT, and SHIRLEY MAY HIE-
BERT, co-partners, doing business in Flathead County
as HIEBERT CONSTRUCTION COMPANY, Defendants
and Appellants.

No. 10485

Submitted June 12, 1963. Decided September 13, 1963.

385 P.2d 90

Jack L. Green, Fred C. Root (argued), Missoula, for appellants.

Marshall H. Murray (argued), Kalispell, J. F. Fennessy, Libby, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment of the district court in favor of the plaintiff, Leo Kyser, in an action for an accounting. The defendants below comprise a partnership and will be referred to in this opinion as the appellant, as will the defendant, Harold L. Hiebert, who represented the partnership in all transactions pertinent to this controversy and at the trial.

The material facts are as follows: On July 8, 1953, the appellant and respondent, both general contractors, executed a written agreement providing for the financing, supervision

and performance of two named contracts "and any other project that may be jointly agreed upon." Under the agreement, the appellant was to provide the necessary financing while the respondent would be responsible for supervision and performance of the work, with profits to be shared equally. One of the contracts named in the agreement was, at the time, in the bidding stage and was never obtained. The other, calling for the movement from Hungry Horse, Montana, of two houses to Libby and one house to Troy, Montana, had already been concluded in the name of the respondent. In addition to this project, the appellant and respondent, pursuant to the above agreement, jointly undertook three other projects of varying degrees of magnitude. Two involved the remodeling of existing buildings and one consisted of the laying of a concrete slab for a transformer station. The performance of these contracts occupied a period of approximately five months, from July to December 1953.

At the time of the above-mentioned agreement, the respondent was in poor financial condition and during the succeeding months he and the appellant discussed, between themselves and with others, possible remedial measures. These discussions culminated in a document dated October 10, 1953, which provided in part:

"The following temporary memorandum of agreement is hereby executed by the undersigned for the purpose of declaring their intent in connection with a working agreement that the parties are planning to enter into in more detail in the near future and as soon as it is possible to find the time to execute such detailed agreement.

＊　　＊　　＊　　＊　　＊　　＊　　＊

"The Undersigned Leo Kyser is hereby to transfer to Harold L. Hiebert his machinery, equipment and other personal property and in payment thereof the said Harold L. Hiebert, for the Hiebert Contracting Co., a partnership will pay a sum agreeable to the parties, but will apply the same on outstand-

ing bills of Leo Kyser. The said Leo Kyser further authorizes and directs all persons owing him and Harold L. Hiebert in any joint venture to pay the said Harold L. Hiebert therefor and the said Harold L. Hiebert agrees to apply the same on the outstanding bills owed by Leo Kyser.

"Leo Kyser also agrees to work for the said Hiebert Contracting Company for which services he will be paid the sum of One Hundred Dollars ($100.00) a week together with 25% of the profits from such business." (For clarity, we observe that this provision did not pertain to the four joint ventures in contention.) The more detailed agreement promised in paragraph one of the above-quoted writing was never executed. The relationship of employee-employer lasted until the latter part of 1954.

The action which gave rise to the instant appeal was commenced by the respondent in 1958 after unsuccessful efforts by the parties to resolve their differences on an informal basis. In that action, the respondent sought an accounting, based upon allegations that the value of the equipment and money transferred to the appellant under the agreement of October 10, 1953, plus the respondent's share of the profits from the four joint ventures, exceeded the amounts due respondent's creditors; and that the appellant has failed to fully comply with his obligation to disburse these sums to the respondent's creditors and remit the excess to the respondent. Following commencement of the action, the parties attempted, without success, to resolve their dispute through voluntary submission to arbitration.

There followed a lengthy trial at which the testimony of numerous witnesses and much documentary evidence was considered by the lower court. The trial was conducted within the framework of a stipulation by the parties as to the gross profit of the four joint ventures, the total amount of money transferred by the respondent to the appellant pursuant to the agreement of October 10, 1953, the total amount of money

disbursed by the appellant to the respondent's creditors, and the total of some, but not all, categories of expense chargeable to the joint ventures. The factual issues remaining were: (1) The amount and value of the equipment transferred to the appellant by the respondent pursuant to the agreement of October 10, 1953, and (2) The amount of certain categories of expense chargeable to the joint ventures which were not included in the stipulation.

At the conclusion of the trial, and of a supplementary hearing devoted exclusively to the question of the value of the equipment transferred by the respondent to the appellant, the court found the appellant indebted to the respondent in the sum of $7,667.34 and entered judgment accordingly. From that judgment the instant appeal was taken.

In essence, the appellant's various assignments of error challenge the correctness of the trial court's evaluation of the evidence presented to it. The instant action is an equity case, Steiner v. McMillan, 59 Mont. 30, 195 P. 836 (1921), and while this court is consequently required to review and determine all questions of fact arising upon the evidence, R.C.M. 1947, § 93-216, the judgment of the lower court comes to this court clothed with a presumption of correctness. Bouma v. Bynum Irrigation District, 139 Mont. 360, 364 P.2d 47 (1961). In equity cases, this court "will not disturb the trial court's findings where there is substantial evidence to support them, and we cannot overturn findings unless there is a decided preponderance of the evidence against them." Favero v. Wynacht, 140 Mont.358 at p. 377, 371 P. 2d 858 at p. 868 (1962). As long as the decision of the lower court is supported by substantial evidence, this court will not overturn the decision even though the evidence is conflicting and would support findings in favor of the party to the controversy who did not prevail in the lower court. Bouma v. Bynum Irrigation District, supra. It is noted that the judgment of the court below is accompanied by findings of fact only with respect to the

question of the value of the equipment transferred by the respondent to the appellant; findings of fact respecting the other factual issues inherent in the controversy were expressly waived by the parties. In such a case, this court will imply the existence of all findings necessary to support the judgment, provided, of course, that such implied findings are warranted by the evidence. Steiner v. McMillan, supra.

With these principles in mind, we will now evaluate the appellant's contentions in the light of the pertinent evidence to determine whether the judgment below should be disturbed by this court. As stated above, the two basic factual issues before the lower court were: (1) The amount and value of the equipment transferred by the respondent to the appellant, and (2) The amount of certain categories of expense chargeable to the joint ventures. The appellant asserts that the lower court erred in its determination respecting both of these issues, and thus the question before this court is whether those findings are predicated upon substantial evidence.

Concerning the question of the amount of equipment transferred by the respondent to the appellant, the cornerstone of respondent's case is a document admitted into evidence dated August 29, 1953, and labeled a "Bill of Sale". It provides in relevant part:

"Know All Men by These Presents, that the undersigned for the sum of $1.00 and other valuable consideration does hereby sell, transfer, and deliver unto: Hiebert Contracting Company, Kalispell, Montana, the following described equipment: All equipment owned by Leo Kyser and Associates, or listed on the attached sheet.   *   *   *"

The document was signed by the respondent. Attached to the document was a list of equipment and, with the exception of an item that was circled, the respondent testified that the list correctly reflected the equipment owned by him as of the date of the so-called bill of sale. The respondent further testified that this sheet of paper was attached to the "Bill of Sale"

when it was delivered to the appellant. The appellant testified that he received the "Bill of Sale" and that, although the attached sheet of paper was not the same sheet of paper as originally attached thereto, the list of equipment contained therein "was basically the same" as the original attachment. The appellant's testimony that the equipment list before the lower court was not the same as was originally attached to the "Bill of Sale" was corroborated by a Mr. Smithburger, a bank official, who had played an active role in the transaction. However, Mr. Smithburger was unable to say whether the second sheet contained a different list of equipment than the original.

The respondent testified that to the best of his knowledge, all of the equipment on the list, with the exception of two items, was used on the joint venture operations or was delivered to the appellant's yard in Somers, Montana, or his office in Kalispell, Montana; that upon the completion of the joint venture projects the equipment not previously delivered was then turned over to the appellant. This was corroborated in large part by a Mr. Thompson who worked on two of the joint venture undertakings in the capacity of foreman. The appellant testified that an inventory of the equipment to be transferred by the respondent was never made, and that, with the exception of a number of items he was unable to remember, he did not know what was delivered to him. He testified further that there were a number of items he was sure were not delivered to him.

On the basis of the foregoing, the lower court concluded that the list of equipment admitted into evidence was an accurate reflection of the equipment actually transferred to the appellant, and predicated his judgment, in part, upon that premise. We are of the opinion that such a finding is not inconsistent with the evidence. It is true, as the appellant points out, that neither the respondent nor Mr. Thompson were able to trace the physical transfer of each individual item of equip-

ment to the appellant. However, the respondent admitted that he was not able to state with complete certainty that he did not receive any particular item on the list. Because the witnesses were testifying to events which transpired over seven years prior to the trial, a degree of vagueness on the part of all concerned is to be expected.

Passing now to the question of the value of the equipment transferred by the respondent to the appellant, some supplementary factual detail is appropriate in the interest of clarity. The so-called Bill of Sale dated August 29, 1953, was executed by the respondent and delivered to the appellant pursuant to an oral agreement, the terms of which vary according to whether the appellant or the respondent is relating its contents. Both parties agree that the purpose of the transaction was to ameliorate the financial instability of the respondent; and they agree that the value of the property represented an amount which the appellant was to disburse to the respondent's creditors. The respondent testified that at the time the Bill of Sale was delivered to the appellant, the parties had concluded an oral agreement under which the appellant purchased the equipment for a lump sum of $8,182.92. The money, according to the respondent's version of the transaction, was to be first applied to the respondent's debts, with the balance remaining to go to the respondent. The appellant denied that the parties had settled upon a lump sum price. According to his version, the effect of the Bill of Sale was to make him the absolute owner of two pieces of equipment, i. e., a Dodge Power Wagon and a Chrysler sedan, and that, with respect to the other equipment, "it was our agreement * * * that when we [appellant] took possession of any of this [equipment] * * * we had to pay for it either at an agreed price [or] if we couldn't agree on a price, then formally I just didn't take it." According to the appellant, at the time of the "Bill of Sale" the agreed price for the Dodge Power Wagon was $1,000 and for the Chrysler $1,600. The appellant also testified that

474

following this date, the parties agreed, on an item by item basis, what the price of some of the remaining items of equipment would be. The respondent then testified that, with respect to some items, such subsequent individual valuation did take place, but that it was understood that the aggregate of the individual amounts would equal the price originally agreed upon. However, with the exception of one item, a concrete mixer, the record is devoid of any evidence concerning what value was agreed upon with respect to any piece of equipment or personal property, save the appellant's testimony concerning the Dodge Power Wagon, and the Chrysler sedan. Moreover, a letter from the respondent to the appellant dated November 24, 1954, at which time the parties had either terminated or were about to terminate their relationship, stated in part:

"The following is a listing of estimated fair values of the remaining pieces of construction and office equipment. This list does not include any equipment heretofore mutually agreed upon with regard to price." The list included every item of equipment and personal property listed in the attachment to the "Bill of Sale" of August 29, 1953, with the exception of the vehicles and concrete mixer mentioned above, several items the appellant claims never to have received, and three items of such inconsequential value that they could have been excluded from the list through oversight.

Earlier in this opinion was quoted a document dated October 10, 1953, a portion of which is relevant to the question now under consideration. For convenience, the relevant excerpt is herewith repeated:

"The following temporary memorandum of agreement is hereby executed by the undersigned for the purpose of declaring their intent in connection with a working agreement that the parties are planning to enter into in more detail in the near future and as soon as it is possible to find the time to execute such detailed agreement. * * *

"The undersigned Leo Kyser is hereby to transfer to Harold L. Hiebert his machinery, equipment and other personal property in payment thereof the said Harold L. Hiebert, for the Hiebert Contracting Company, a partnership will pay a sum agreeable to the parties, but will apply the same on outstanding bills of Leo Kyser."

The appellant testified that the above-mentioned document was intended to encompass and be a full expression of all prior oral agreements between the parties. The respondent, on the other hand, testified that the writing was inconsistent with the prior oral agreement respecting the transfer of his equipment to the appellant, but that he was, at the time of the execution of the document, so "meshed" that he was compelled to become a signatory thereto.

At the conclusion of the trial, the lower court decreed that the appellant had a duty to account to the respondent for the reasonable value as of October 10, 1953, the date of the document quoted in part above, of the equipment listed in the sheet attached to the Bill of Sale dated August 29, 1953. The decree also provided for a hearing devoted exclusively to the question of the value of that equipment, should the respondent be dissatisfied with the appellant's accounting. The accounting filed by the appellant proved unsatisfactory to the respondent and upon the latter's application a hearing devoted to the question of value was held. Based upon this hearing the lower court found the reasonable value of the equipment as of October 10, 1953, to be $7,445.

While the appellant does not object to the lower court's use of the date October 10, 1953, in assessing value for the purpose of the accounting, the use of the standard "reasonable market value" is challenged on this appeal. The short answer to the appellant's contention is that the lower court's judgment specifically applied the criterion "reasonable value" rather than "reasonable market value".

The appellant also challenges the finding of the lower court

respecting what the value of the equipment and other personal property actually was. We are of the opinion that this contention is likewise without merit. The equipment in question may be roughly divided into four categories: (1) Automotive equipment; (2) Office equipment; (3) Electrical construction equipment; and (4) Miscellaneous equipment not within the above three categories. The condition of all of the items of equipment as of October 10, 1953, was established by testimony of the respondent and of Mr. Thompson, who, as an employee of the respondent prior to and during the joint venture operations, had worked with or was familiar with the equipment. Based upon the estimated condition of the property, testimony concerning the approximate value of each individual item was given by witnesses who, in addition to the respondent, included two dealers in automotive equipment, a dealer in office equipment, and a dealer in electrical construction equipment. The lower court's findings placed a value upon the equipment which, in the aggregate, amounted to approximately $900 less than the figure indicated by the respondent's evidence.

On the basis of the foregoing, we find that the judgment of the lower court respecting the question of equipment valuation is supported by substantial evidence. Therefore, it is unnecessary to analyze the appellant's contradictory evidence, which, in view of the figure arrived at by the lower court, was taken into consideration by that tribunal.

We will now turn to the second major factual issue before the lower court, i. e., the amount of certain categories of expense chargeable against the gross profits of the joint venture. It was stated above that upon the completion of the main trial, the lower court rendered a decree relative to equipment valuation, the effect of which was to pave the way for a second hearing devoted to that question. In the same decree the lower court also rendered final judgment on all other issues before it and held that, in addition to the reasonable value of the equipment, the appellant was indebted to the respondent

in the amount of $222.34. This judgment was unsupported by findings of fact, which were expressly waived by the parties.

As mentioned earlier, the trial below was conducted within the framework of a stipulation as to certain facts. They were:

(1) Gross profits from the four joint ventures—$37,966.87;

(2) Some, but not all, expenses of the joint ventures — $35,699.13;

(3) Total amount of money transferred by the respondent to the appellant—$9,066.77;

(4) Total amount disbursed by the appellant to the respondent's creditors—$9,479.80.

It is undisputed that the respondent is entitled to any excess remaining after the amount paid to his creditors is deducted from the total of:

(a) His one-half share of the net profits from the joint ventures;

(b) The amount of money transferred to the appellant; and

(c) The value of the equipment transferred to the appellant.

Since the lower court decreed that, aside from the value of the equipment, a balance of $222.34 was due from the appellant, category (c) may be put aside for the purpose of reviewing that aspect of the lower court's judgment. In arithmetic terms, the stipulation results in the following figure against which the lower court applied the disputed expenses in arriving at the sum of $222.34: Gross profit from joint ventures ($37,966.87) less stipulated expenses ($35,699.13) equals net profit before disputed expenses ($2,267.74) divided by one-half equals the respondent's share of net profit before disputed expenses ($1,133.87) plus money transferred by respondent to appellant ($9,066.77) equals $10,200.54 minus the amount of money disbursed by the appellant to the respondent's creditors ($9,479.80) equals $720.74.

The disputed expenses may be divided into two categories:

(1)   Rental charges for equipment belonging to the appellant and respondent and used in the joint ventures; and

(2)   Miscellaneous expenses including office rent, utilities, travel, accountant's charges and expenses for gasoline, lubrication and tires for vehicles used in connection with the joint ventures.  These two categories will be considered in the order stated.

The question of equipment rental hinges upon the meaning of, and the understanding of the parties respecting, the following provision in the joint venture agreement of July 9, 1953:

"For any and all tools and equipment owned by either party, used on the projects covered hereby, such owner shall be paid A.G.C. rental rates, or be paid on such other basis as may be agreed upon by both parties."

The appellant and respondent agree that the joint venture agreement, of which the above provision is a part, covered all four joint ventures.  However, concerning the question of equipment rental, they are in sharp disagreement.  The appellant testified that "A.G.C. rental rates" is a term of art and means that rates are chargeable only on a daily, weekly, or monthly basis.  In other words, according to the appellant, under the A.G.C. (Association of General Contractors) system, if party A borrows a piece of equipment from party B, uses it for two hours and does not return it for two weeks, he will be charged two weeks rent.  The appellant also testified that the provision in the joint venture agreement quoted above represents the only agreement between the parties concerning equipment rental, thus negating the possibility that the parties exercised the option provided therein to utilize some other basis to establish equipment rental.  In corroboration, the appellant called to the stand a Mr. Anderson from Great Falls who is in the equipment rental business and who testified that he always rented equipment "strictly by the book" and that he had never charged nor seen, in the book containing A.G.C. rental rates, a rate chargeable on an hourly basis.  He admitted, however,

that he was not qualified to state what the practice among contractors in the Kalispell area was.

The respondent controverted the appellant in a number of respects. He testified that the term "A.G.C. rental rates" did not, under the custom and usage among contractors in the Kalispell area, exclude, by definition, rates chargeable on an hourly basis; that the parties understood that such a basis was to be used in the joint venture projects; and that he had instructed the foreman on the jobs to keep records accordingly. He introduced into evidence daily records kept by the foremen on three of the projects indicating that the foremen did, in fact, record the number of hours certain pieces of equipment were used. A witness for the respondent, who qualified as being familiar with equipment rental and joint venture agreements, testified that, in respect of joint venture agreements, the customary practice was to charge equipment on an hourly basis.

Another aspect of the dispute over equipment rental was a subcontract, the existence of which was claimed by the respondent and denied by the appellant. In the project involving the movement of three houses, the transportation of the buildings was performed by three trucks belonging to the appellant. The respondent testified that the appellant supplied the trucks and other equipment on a subcontract basis for a price of $2,400, in lieu of payment for equipment rental. The appellant denied ever discussing such a subcontract with the respondent.

While the judgment of the lower court was not based upon the findings of fact respecting the question of equipment rental, it is apparent that the court used an hourly basis in charging equipment rental against the gross profits of the joint venture. Both the appellant and the respondent predicate their arguments before this court on that assumption and, as a matter of arithmetic, the amount found due from the appellant to the respondent does not correspond with the fig-

ure which would have been arrived at by applying rental charges on the basis urged by the appellant. There appears to be no dispute about the mathematical correctness of the lower court's calculations in computing equipment rental on an hourly basis and, on the basis of our calculations, we find that they are consistent with the evidence.

Applying the principles stated earlier in this opinion, concerning the standards to be used by this court when reviewing the judgment of a lower court with respect to its factual determinations in an equity case, we find that the lower court's findings respecting how equipment rentals should be charged should not be disturbed by this court. Ultimately, the question is whether the respondent's or the appellant's version of the pertinent facts is correct. We do not find the testimony of either party to be so at variance with the evidence, or the reasonable inferences to be drawn therefrom, as to be unworthy of belief. Consequently, it is not within the province of this court to redetermine the question of how equipment rental should be charged against the joint ventures.

However, we do find that the lower court's judgment is, in one important respect, inconsistent with the evidence. As stated above, the stipulation of the parties included certain uncontested expenses and, aside from the matter of the value of the equipment transferred from the respondent to the appellant, the stipulation results in a balance, before the disputed expenses, of $720.74 in favor of the respondent. In view of the fact that the judgment of the court resulted in a balance of $222.34 in favor of the respondent, it is clear that the lower court neglected to give the appellant credit for the $2,400 subcontract price which, according to the contention of the respondent, the appellant was to receive in lieu of equipment rental. The evidence clearly indicates that no hourly record of the use of the appellant's trucks on the house moving projects was kept. In the present appeal, appellant points to this fact to bolster his contention that the parties had never agreed

to the use of an hourly basis for the purpose of equipment rental. During the trial, the respondent's rejoinder to this argument was the existence of the subcontract which, since it entitled the appellant to a lump sum payment (or credit), obviated the necessity of keeping track of the use of the appellant's equipment on an hourly basis. It is clear to this court that the respondent cannot have his cake and eat it too, and that if he is to prevail on the question of how the equipment should have been charged against the profits of the joint venture, he must also prevail on the question of whether the subcontract existed. Therefore, we find that the appellant is entitled to a credit of $2,400 against the amount found by the lower court due and owing to the respondent.

The second category of disputed expenses may be summarily disposed of in this opinion. They include office rent, utilities for the office, accountant's charges, travel, and expenses attributable to operation and upkeep of the motor vehicles used in the joint venture operations. The appellant introduced, through the testimony of his accountant and through the appellant's accounting records, evidence concerning amounts spent for the above items during the period of the joint ventures. However, the books, which were located in the appellant's office and kept by the appellant's accountant, did not distinguish between expenses attributable to the joint ventures and expenses attributable to other business and personal activities of the appellant, independent of the joint ventures. Moreover, the record is devoid of any concrete basis upon which to allocate expenses to the joint ventures. The respondent testified that the joint ventures did, to some extent, utilize the appellant's office, and that a reasonable basis existed for charging the joint ventures with one-half of the office rent. There is also evidence that the appellant's trucks made several trips to Spokane, Washington, in furtherance of the house moving projects.

It is unnecessary to go into any greater detail concerning the

miscellaneous expenses in question, for we find that the monetary figure arrived at by the lower court in its decree is consistent with an interpretation that the lower court did, in fact, allocate an appropriate share of these expenses to the joint ventures. Consequently, we find that that part of the judgment, insofar as the expenses in question are concerned, should not be disturbed.

The judgment is modified in accordance with this opinion, i. e., the appellant is herewith given a credit of $2,400 against the amount of $7,667.34, found due and owing the respondent by the lower court. Both parties shall pay their respective costs for this appeal.

As so modified, the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, ADAIR and DOYLE, concur.