No. 13210

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

GEORGE D. MISKOVICH,

Plaintiff and Respondent,

-vs-

CITY OF HELENA, MONTANA, a Municipal
Corporation, JACK WILLIAMS, Chief of
Police of said City of Helena; THE
POLICE COMMISSION of said City of
Helena and the members thereof in their
official capacity as Police Commissioners,
et al.,

Defendants and Appellants.

Appeal from:   District Court of the First Judicial District,
               Honorable Nat Allen, Judge presiding.

Counsel of Record:

    For Appellants:

        C. W. Leaphart, Jr. argued, Helena, Montana

    For Respondent:

        Loble, Picotte and Pauly, Helena, Montana
        Gene A. Picotte argued, Helena, Montana

Submitted: April 21, 1976

Decided: JUN 2 4 1976

Filed: JUN 2 4 1976

Thomas J. Kearney
                                          Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

The City of Helena appeals from a judgment of the district court, Lewis and Clark County, Hon. Nat Allen presiding, reversing the Helena Police Commission's findings and adjudication and restoring policeman George D. Miskovich to the rank of sergeant with retroactive pay.

On April 25, 1974, Sergeant Miskovich an eight year veteran of the Helena Police Department, with a spotless record and an early appointment to the rank of sergeant, was charged by the Chief of Police with three specific episodes, each alleged to constitute "misconduct in office", "conduct unbecoming an officer" and conduct "such as to bring reproach upon the police force". The charges were in writing:

1. Cameron arrest, February 3, 1974

    (a) Striking arrestee Cameron in the face while transporting him to police station, breaking Cameron's nose.

    (b) Grabbing Cameron by the hair in the police station and pounding his head upon the booking desk on two or more occasions.

    (c) Throwing Cameron to the floor and beating him with fists after Cameron requested permission to take a breathylizer test.

2. Coldwell arrest, March 4, 1973.

Putting a "full Nelson" upon an arrestee named Coldwell, then releasing Coldwell, grabbing him with one hand and hitting him in the face.

3. St.Marks arrest, June 23, 1973.

Arresting a woman named Mrs. St. Marks for public drunken-

ness, and when this woman indicated that she did not desire to go into the police station, grabbing her, pulling her forward and "hitting her in the face with her purse", at the same time shouting accusations at her and holding her by the hair.

All three charges were contained in one written document. The first occurred about three months prior to charges, the remaining two approximately a year before. It specifically recited that all charges were brought under section 11-1806(1), R.C.M. 1947, notifying Miskovich that he would be tried before the police commission in accordance with the statute. In the same paragraph Miskovich, on those identical charges, was suspended without pay and without hearing, effective immediately. This suspension without notice or hearing was expressly done by the Chief of Police in accordance with section 11-1806(10), R.C.M. 1947.

Miskovich filed a mandamus proceeding in the district court, Lewis and Clark County, successfully obtaining a writ of mandate to forbid the summary suspension beyond the last day of April 1974, because the statute provided a maximum suspension under subsection (10) of ten days in any one calendar month, and he was suspended on April 25. Miskovich appealed this summary five day suspension to the police commission, as provided in the statute. That appeal was heard on the same evidence as were the charges under subsection (1). The police Commission held against Miskovich on the suspension appeal, and because the legislature did not provide for a further appeal, the summary discipline under subsection (10) became final.

The Helena Police Commission, a three man body, was officially chaired by Commissioner Pfeiffer, who became ill and left the hearing. At his departure it was apparently stipulated by all parties that

Pfeiffer would be excused and would not participate further in the case. The parties agree there was a stipulation but the specific terms are in doubt. Pfeiffer missed the testimony of several witnesses, plus most of the direct examination of Miskovich. He returned to the hearing in the course of Miskovich's direct examination, and proceeded to participate in the commission's findings and decision, signing as chairman of the police commission.

The police commission found the charges arising out of the Coldwell arrest of March 1973 were not proven. Those arising out of the St.Marks arrest of June 1973, were found proven in their entirety. Those arising from the Cameron incident of February 1974 were found proven in part, specifically the use of excessive force in backhanding Cameron and slamming his face into the booking counter. In accordance with these findings, the commission suspended Miskovich an additional thirty days and permanently reduced his rank from sergeant to patrolman.

These penalties were approved by the city manager. The statutory action for review in the district court by Miskovich ensued. The district court reviewed the record in the manner directed by the decision of this Court in a prior proceeding by the City of Helena in supervisory control, (City of Helena v. District Court, 166 Mont. 74, 530 P.2d 464, 32 St.Rep. 52.), reversed the police commission decision and restored Miskovich retroactively to his pay, emoluments and rank. This appeal by the City of Helena followed.

The City presents four issues for review:

(1) Whether the district court exceeded its scope of review in reversing the police commission findings on the weight of the evidence.

- 4 -

(2) Whether a policeman subject to charges under section 11-1806 (1), R.C.M. 1947, can also be suspended on the same charges under section 11-1806 (10), R.C.M. 1947.

(3) Whether the district court erred in concluding the police commission findings were nullified by the absence of Commissioner Pfeiffer.

(4) Whether certain evidentiary rulings of the police commission materially prejudiced Sergeant Miskovich.

The City contends the district court exceeded its scope of review of the police commission proceedings. In support of its position the City relies on the Montana Administrative Procedure Act, specifically section 82-4216 (7), R.C.M. 1947, which states in pertinent part:

> "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. * * *"

First, the Montana Administrative Procedure Act, Title 82, Chapter 42, is not applicable to the administrative functions of metropolitan police commissions. The full title of the Montana Administrative Procedure Act, Chapter 2, Laws of Montana 1971, Extraordinary Session, reads in pertinent part:

> "An act prescribing uniform procedures for state administrative agencies * * *." (Emphasis supplied.)

The Montana Administrative Procedure Act defines "agency" at section 82-4202 (1), R.C.M. 1947, as:

> "* * * any board, bureau, commission, department, authority or officer of the state government authorized by law to make rules and to determine contested cases * * *." (Emphasis supplied.)

Though city police commissions are creations of state statute, they are obviously entities of municipal government. It is the mayor or city manager who appoints the police commissioners

- 5 -

with the consent of the city council or commission. The city council or city commission determines the compensation of police commissioners, section 11-1804, R.C.M. 1947. It is the duty of the police commission to oversee the hiring and discipline of police officers, the police officers being municipal employees, sections 11-1805, 11-1806, R.C.M. 1947. See State of Montana v. District,_____Mont._____, _____P.2d_____, 33 St.Rep. 464. Since the metropolitan police commission is not a state administrative agency as defined in the Montana Administrative Procedure Act, the act is not applicable to the question of the scope of district court review of police commission findings.

The controlling statute is the Metropolitan Police Law, Title 11, Chapter 18. Section 11-1806 (7), R.C.M. 1947, states:

> "When a charge against a member of the police force is found proven by the board, and is not vetoed by the mayor, the mayor must make an order enforcing the decision of the board, or if modified by the mayor, then such decision as modified, and such decision or order shall be subject to review by the district court of the proper county on all questions of fact and all questions of law." (Emphasis supplied.)

This Court in disposition of a previous application by the City of Helena for a writ of supervisory control directed to the district court (City of Helena v. District Court, 166 Mont. 74, 530 P.2d 464, 32 St.Rep. 52,54), interpreted district court review of police commission findings in this manner:

> "* * *However, to review the law is to ascertain whether the rulings thereon were correct, to review the facts is to determine whether the evidence supports the police commission findings. This would be similar to the review of law and facts as in an equity case. See section 93-216, R.C.M. 1947."

It has long been held by this Court that review of facts in an equity case is based on the substantial evidence test. White v.

Nollmeyer, 151 Mont. 387, 443 P.2d 873; Bender v. Bender, 144 Mont. 470, 397 P.2d 957; Kyser v. Hiebert, 142 Mont. 466, 385 P.2d 90. Thus the district court's power to make its own determination as to the weight of the evidence resulting from the police commission hearings is analogous to this Court's power to do the same in equity cases. Here, the district court determined there was not substantial evidence to warrant the police commission findings.

Upon review of the transcript of the police commission hearing, we agree with the district court's determination as to the weight of the evidence bearing in mind the two basic principles espoused by this Court in State ex rel. Wentworth v. Baker, 101 Mont. 226, 53 P.2d 440. In that case, the city council and mayor suspended a policeman. After issuing a writ of certiorari and holding a hearing, the district court set aside the suspension and ordered the policeman reinstated. In reviewing the district court's action, this Court first said the district court judgment is presumed to be correct and therefore the burden is on the party challenging it. Second, in determining whether the challenging party has met its burden, this Court has the duty of determining whether or not substantial evidence exists in the record to support the charge. As a final statement on this Court's role in reviewing a proceeding such as this and by way of introduction to discussion of the evidence in the instant case, we note the police discipline case Bailey v. Examining & Trial Board, 42 Mont. 216,218, 112 P. 69, where the Court said:

> "The effect of this provision is that a decision
> of the examining and trial board on questions of fact
> is final and conclusive on all courts if there is any
> substantial evidence to support it. Whether there is

or not is a question in the first instance for a district court to decide. A charge without substance is no charge, and a finding without substantial evidence as its basis is no finding. One of the essential requirements of law is that a charge shall be brought against the officer and that such charge shall embody facts sufficient to constitute a cause of action within the meaning of the Act. Another is that, before the charge can be sustained, some substantial evidence must be given in support of it. * * *"

Turning to the testimony presented at the police commission hearing, we note this testimony in support of the holding that there was not substantial evidence to support the police commission findings:

(1) As to the charges stemming from the Cameron incident, Cameron testified that enroute to the police station Miskovich engaged in an unprovoked attack against him at a time when he was handcuffed. Cameron claimed Miskovich's attack broke his nose. However other testimony reveals the incident may not have been quite as Cameron pictured it. Cameron testified that he had spent three to four hours in a local bar prior to his arrest. Officer Sebens, present at the time of Cameron's arrest, testified Cameron resisted arrest but that Miskovich engaged in no police brutality at that time. Officer Crawford, also present at the time of Cameron's arrest, verified Officer Sebens' testimony. Miskovich testified Cameron was abusive, unruly, and resisted arrest and during the drive to the police station, Cameron kicked him in the chest, momentarily stunning him, so that he felt compelled to backhand Cameron in the face to protect himself.

Upon his arrival at the station, Cameron testified that Miskovich continued to abuse him, at one point grabbing him by the hair and slamming his face into the booking counter. Officers

- 8 -

Valiton and Stradley confirmed Cameron's story on this point. However, once again other testimony would tend to cast substantial doubt on this particular version of the incident. Bonnie Goltz, working as a dispatcher near the booking counter at the time of the alleged face slamming incident, directly contradicted the testimony of these two officers, stating Cameron was so unruly that Miskovich held his head to the booking counter to calm him down. She explicitly stated that at no time did Miskovich slam Cameron's head against the counter.

In addition, one of the officers who testified for the City, Officer Stradley, was under investigation in connection with an alleged felony in Broadwater County. The victim of that felony testified that no police investigation or disciplinary action was to be taken against Officer Stradley until "* * *after the Miskovich case was taken care of * * *". The victim testified further that this was the reaction, even though he informed the authorities of a signed confession by Officer Stradley on the matter. Officer Stradley has since been removed from the/police department. Helena

Finally, in view of the alleged charge of excessive violence inflicted on Cameron by Miskovich, evidence as to Cameron's actual physical condition subsequent to the alleged incident is of the utmost importance. Officer Grant Johnson, a witness for the city and the officer in charge of the shift on the day of the arrest, stated on cross-examination that he told Miskovich on the day of the arrest that Cameron did not appear to be injured. A close examination of the photo of Cameron taken the day of his arrest and marked Miskovich Exhibit 2, shows no marks on the prisoner compatible with the alleged violence purportedly inflicted on Cameron's head and face.

In view of the foregoing evidence, we hold the findings of the police commission as to charges against Miskovich stemming from the Cameron arrest are not supported by substantial evidence.

(2) The police commission findings as to the St. Marks arrest of June 1973. Officer Bryson who assisted Miskovich in arresting the St. Marks woman testified that upon arriving at the police station, Miskovich proceeded to grab the woman by the hair and pull her down an entrance ramp, at the same time striking her in the face with her purse. Miskovich testified he felt compelled to strike her once with her purse because she was kicking and biting and had taken his thumb in her mouth and refused to let go.

Further scrutiny of Officer Bryson's testimony reveals (1) he admitted the woman had been drinking, (2) it was necessary for both officers to exert force to accomplish the arrest and place her in the patrol car, and (3) the woman attempted to jump out of the patrol car on the way to the station.

Mrs. St. Marks plead guilty to a charge of resisting arrest, paid a $50 fine, and was given a suspended jail sentence. She also plead guilty to a charge of drunkenness and paid a fine of $25. Further, she failed to appear at the commission hearing. On the basis of this evidence the police commission findings as to the St. Marks incident were not supported by substantial evidence.

This type of case should properly be decided on the merits if at all possible. This we have done and consequently an in depth discussion of the procedural due process issues raised is not necessary to the disposition of this matter--but we will comment briefly for clarification of these issues.

- 10 -

Appellant City's second issue seeks a clarification of section 11-1806, R.C.M. 1947 as to subsections (1) and (10).

Miskovich was suspended pursuant to subsection (10) of section 11-1806, R.C.M. 1947. Utilizing the same charges used to justify his suspension, he was then subjected to a police commission hearing pursuant to subsection (1) of section 11-1806. The City contends subsection (10) is a proper means of suspending a policeman pending charges brought under subsection (1), it argues that the power of suspension is incident to the power of removal. Miskovich, on the other hand, contends the applicable subsections are mutually exclusive, and therefore once charges were brought under subsection (10), those same charges could not be used to institute proceedings under subsection (1).

The City contends that suspension pending hearing on the charges is a perfectly legitimate administrative exercise. We agree. However, that principle is not dispositive of the issue. The question here is the mode of such suspension, considering the applicable statute.

While subsections (1) through (9) and subsection (10), of section 11-1806, all deal with matters of police discipline, it is apparent the procedure and remedies available under subsections (1) through (9) are more detailed in their due process protections than those under subsection (10). In particular, contrary to subsections (1) through (9), subsection (10) does not provide for written notice of charges or a hearing prior to suspension, rather the only action required is a notice of suspension given by the mayor or the chief of police, with the approval of the mayor. In addition, suspension under subsection (10) can only be for ten days in any one month, with the only appeal of that suspension being to

the police commission since subsection (10) does not provide for judicial review.

In construing a statutory situation such as exists here, this Court in Adair v. Schnack, 117 Mont. 377, 386, 161 P.2d 641, quoted with approval from the California case People v. Campbell, 110 Cal.App. 783, 291 P. 161, 162:

> "'It is a settled rule of statutory construction that, where different language is used in the same connection in different parts of a statute, it is presumed the legislature intended a different meaning and effect.'"

In State Board of Equalization v. Cole, 122 Mont. 9, 20, 195 P. 2d 989, the Court said:

> "A fundamental rule of construction is that, if possible, effect shall be given to all parts of a statute. * * * And each part of a statute must be given a reasonable construction which will enable it to be harmonized with other provisions * * * and give it vitality and make operative all of its provisions. * * * Statutes 'should be so construed as to give a sensible and intelligent meaning to every part and avoid absurd and unjust consequences. Section 516, Lewis' Sutherland Stat.Const. (2d Ed.)' * * *." (Emphasis supplied.)

Accordingly, in view of provisions in section 11-1806, subsections (1) through (9) and subsection (10), R.C.M. 1947, we hold they are mutually exclusive with subsection (10) intended to deal with minor disciplinary matters capable of being handled within the police department and subsections (1) through (9) intended for charges of a more serious nature, charges which could, if proven, lead to discharge from the police force. Therefore, a policeman charged under section 11-1806, subsection (10), cannot also be subject to identical charges under section 11-1806, subsection (1). To construe this statute otherwise would be to hold the legislature intended to subject the policeman, on one set of charges, to two proceedings before the police commission, one with

- 12 -

various procedural safeguards and the right to judicial review, and the other of a more summary nature with no right of judicial review. It is such "absurd and unjust consequences" alluded to in State Board of Equalization v. Cole, supra, that this Court strives to avoid. However, we emphasize this holding does not mean a police officer cannot be suspended pending a hearing on charges but only that the same charges may not be used to effect both suspension under subsection (10), and the initiation of the formal hearing process under subsection (1).

We agree with the position that a member of an administrative tribunal who was absent from a portion of the adjudicative proceedings before that tribunal should not be allowed to participate in its final decision. This would be particularly important as it pertains to a police commission. Here, there was a transcript record of the proceedings before the commission but this may not always be true as the statute does not require that a record be kept. City of Helena v. District Court, 166 Mont. 74, 530 P.2d 464, 32 St.Rep. 52.

Finding no abuse of discretion and sufficient substantial evidence to support the district court, we affirm the judgment to reinstate respondent police officer to sergeant's rank with retroactive pay and other benefits.

_____
                Justice.

- 13 -

We concur:

_Frank B. Haswell_

_Wesley Castles_

_____
Justices

_Robert J. Nelson_
Hon. Robert J. Nelson, District
Judge, sitting for Chief Justice
James T. Harrison.

. . . . . . . . . . . . . . . . . . . . . . .

Mr. Justice John Conway Harrison dissenting:

I dissent.

_John Conway Harrison_
Justice.

- 14 -