# Terrill et al. v. Kentucky Block Cannel Coal Co.

March 17, 1942.

Harry H. Ramey and Custer Jones for appellants.

Nickell & Nickell and W. M. Gardner for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

In 1888, Granville Haney, who then owned the 40 acre tract of land now owned by W. J. and Lonas Terrill, the appellants herein, executed a coal lease on the land to a predecessor of the appellee and plaintiff below, Kentucky Block Cannel Coal Company. The lease ran for a period of 999 years and provided for a small down payment with royalties at the rate of $2 per acre to be paid when and as the coal was mined. Haney conveyed the property to J. C. Terrill, the father of the appellants, and in 1905, Terrill and his wife executed a writing to the appellee, which is the subject of this controversy.

Since the case turns on the question of whether the

writing executed by the Terrills in 1905 was a lease or a deed, it is necessary that we set forth the salient points in that instrument. The writing was denoted a deed. It referred to the Haney lease and the provisions thereof, and set forth that the Terrills had requested the Company to pay the royalties at that time instead of upon each acre when and as the coal was mined. The instrument then recited:

"* * * Now therefore in consideration of the premises and of the sum of Eighty Two and one half ($82.50) Dollars cash in hand paid by the Second to the first party the receipt of which is hereby acknowledged (it being two dollars per acre royalty on the total acreage of forty one and one fourth embraced in said Lease) the party of the first part has sold and does hereby convey and confirm to the party of the Second part its Successors and assigns forever all the coal on and under the tract of land heretofore referred to a complete description of which can be found in Lease Book No. 1 pages 79, 80 and 81 Morgan County Records. Together with full and free right of ingress, egress and regress on over and through the said land at any time and all times for the purpose of mining for using selling and removing said coals therefrom with the free and exclusive right to open erect equip maintain and operate mines thereon with all necessary mining structures appurtenant thereto and free and exclusive right to with free right of way thereover for the same construct erect equip maintain and operate all roads tram roads railroads and to cause or permit the same to be constructed maintained or operated and to use the surface thereof in any way that may be or by the second party its representatives, successors or assigns deemed to be necessary for mining or transporting the products of mines. To have and to hold the said property and privileges hereinbefore described unto the second party its successors and assigns forever with Covenant of General Warranty of title and that the said Second party its successors and assigns may and shall quietly and peaceably hold and enjoy the same without molestation or interference by any person whatsoever. * * *"

The trial court ruled that the second instrument was a deed, thereby sustaining the position of the appellee. In

appealing from that judgment the appellants insist primarily that the second writing is a part of the original lease and merely provides for a new mode of discharge. It is insisted also that there was no consideration to support a new contract for the mining of the coal.

In the case of Duncan v. Mason, 239 Ky. 570, 39 S. W. (2d) 1006, it was pointed out that, if the effect of an instrument, regardless of what it is called, is to sever the estate and to vest the title to a certain part of it in another, it is a deed. We have no hesitancy in saying that we are of the opinion that the trial court correctly ruled that the instrument in question was a deed and conveyed to the appellee all of the coal under the land now owned by the appellants. The first instrument was called a lease and correctly so, and the second one was called a deed. The first ran for a definite period of years, while the second conveyed all of the coal to the grantee forever, with covenant of general warranty. The lease called for the payment of the royalties when and as the coal was mined. The second instrument provided for the immediate payment of $2 per acre on the whole boundary, regardless of whether coal should be found under all of it, and it enlarged upon the mining rights of the lessee. In the first instrument the lessor reserved the right to mine coal for his personal use, while no such reservation appeared in the second. We can not agree with the position of the appellants that the second instrument was merely a part of the first. We think it was completely independent of that writing. It referred to the lease and the fact that the Terrills were insisting upon the immediate payment of the royalties and then set forth the new terms and conditions heretofore quoted. The payment of the royalties in a lump sum on the whole tract was of itself adequate consideration for the new instrument.

A demurrer was sustained to the third paragraph of the appellants' answer wherein they set forth that the purpose and effect of the second instrument was to convey only the coal having commercial value, and that the Company had entered upon the land and taken therefrom all of the coal having such value and had removed its mining equipment. They insist that the demurrer admitted these allegations. But they filed the deed with their answer and it shows upon its face that the second instrument conveyed all of the coal to the appellee. That this instrument conveyed only the coal having commer-

cial value is a mere conclusion. Furthermore, the judgment sets forth that the appellants admitted in open court that they had mined and removed from the property more than 300 tons of coal and it was stipulated that the coal was worth fifty cents per ton. Counsel for the appellee insist that this contention of the appellants must fail because if the coal could be mined commercially by them, so could it be by the appellee.

The judgment further sets forth that the appellants were not willful trespassers, and ordered that they pay the appellee for the coal at the rate specified per ton; and further that they be perpetually enjoined and restrained from mining or removing any more coal from the property.

The judgment in all respects appears to us to be proper, and we think that it should be and it is affirmed.