WALTER WHITE AND LORRAINE H. WHITE, PLAINTIFFS AND RESPONDENTS, v. FLOYD G. NOLLMEYER, DEFENDANT AND RESPONDENT. JOHN PORTER NELSON, II, DEFENDANT, CROSS CLAIMANT AND THIRD-PARTY PLAINTIFF AND APPELLANT, v. FLOYD G. NOLLMEYER ET AL., DEFENDANT ON CROSS CLAIM, AND HENRY NOLLMEYER AND MARILYN RUTH NOLLMEYER, THIRD-PARTY DEFENDANTS AND RESPONDENTS.

No. 11346.
Submitted March 4, 1968.   Decided July 16, 1968.
Rehearing Denied Aug. 19, 1968.
443 P.2d 873

Corette, Smith, Dean & Wellcome, Page Wellcome, argued, Butte, for appellant.

Habedank, Cumming & Best, Wayne K. Cumming, argued, Sidney; Landoe & Gary, Hjalmar B. Landoe, appeared, Gene I. Brown, argued, Morrow & Nash, James H. Morrow, Jr., argued, Bozeman, for respondents.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an appeal by one of two defaulting purchasers under a conditional sales contract from two judgments entered against him: (1) a judgment in favor of the sellers for the unpaid balance of the purchase price, interest and attorney's fees, and (2) a judgment refusing to set aside two property transfers by the other defaulting purchaser claimed to have been made in fraud of creditors. All claims and defenses involved in the two judgments were litigated in one trial in the district court of Gallatin County before the Honorable W. W. Lessley, District Judge, sitting without a jury.

After initial identification, all parties will be referred to by their surnames except the five Nollmeyers who will be referred to by their given names as well. Plaintiffs are Walter A. White and Lorraine H. White, husband and wife, who sold their drugstore business in Bozeman to defendants Floyd G. Nollmeyer and John Porter Nelson II under a conditional sales contract and sued them to recover the unpaid balance thereunder. In the same suit Nelson filed a cross-claim against his co-defendant. Floyd Nollmeyer and a third-party claim against Henry Nollmeyer and Marilyn Ruth Nollmeyer, who are husband and.

wife and respectively the brother and sister-in-law of Floyd Nollmeyer. Under the cross-claim and third party complaint Nelson sought two judgments: (1) a judgment against cross-defendant Floyd Nollmeyer for attorney's fees and costs, and (2) a judgment against cross-defendant Floyd Nollmeyer and against third party defendants Henry and Marilyn Ruth Noll-meyer setting aside two property transfers allegedly made in fraud of creditors. Also involved, although not a party to any of these actions, is Leah Rae Nollmeyer, the wife of Floyd Nollmeyer.

The facts forming the basis of this controversy are quite detailed and incapable of easy summation. On June 25, 1963, the Whites, as sellers, and Floyd Nollmeyer and Nelson, as purchasers, entered into a written conditional sales contract wherein the Whites agreed to sell and Floyd Nollmeyer and Nelson agreed to buy "the personal property and business * * * commonly known as 'White's Pharmacy' ", including the furniture, fixtures and equipment; the stock of merchandise on hand for sale; the use of the trade name; the good will; and agreed to transfer the existing leases on the business premises.

The total purchase price was $35,000, payable $7,500 down with the balance payable at the rate of $300 monthly. The contract additionally contained the following provisions: (1) an unconditional promise to pay the total purchase price by the buyers, (2) the consideration for the contract was the payments and promises to be paid and performed by the buyers and the agreements by the sellers to sell and convey, (3) title and ownership of the personal property which was the subject of the contract would remain in the sellers with the right of possession prior to default vested in the buyers, (4) a value of $17,500 was allocated to the furniture, fixtures and equipment and a value of $17,500 to the inventory of merchandise in arriving at the total purchase price of $35,000, (5) the buyers were required to keep the stock of merchandise up to a whole-

sale cost value of $17,500 or the unpaid balance owing under the contract, whichever was lesser, and to maintain fire insurance with loss payable clause to sellers on the tangible personal property in the amount of the unpaid balance under the contract, (6) the buyers could not sell, assign, mortgage or pledge their interest in the contract or in the personal property which was the subject of the contract (subject to exceptions not pertinent here), (7) in the event of default by the buyers, the sellers had the right to possession of the business premises, personal property therein, the profits of the business, and the peaceful surrender of the same to them and could (a) at their option declare the entire unpaid balance due and owing and institute suit to collect the same with attorney's fees, or (b) enter the premises, take the property, and retain all sums previously paid to them under the contract as liquidated damages, (8) upon final payment, sellers would transfer title to all property which was the subject of the contract to the buyers.

Floyd Nollmeyer and Nelson paid the $7,500 down payment, took possession, and commenced operation of the business on July 1, 1963. Thereafter they formed a close corporation known as Bozeman Pharmacy, Inc. which operated the business until it closed its doors. In September 1964, Nelson left the business, transferred all his stock in the corporation to Floyd Nollmeyer, left $6,250 he had put into the business, and secured a "save harmless" agreement from Floyd Nollmeyer wherein the latter agreed to become solely responsible for all personal obligations incurred by Nelson in the purchase and operation of the business and to save Nelson harmless from any demands or suits in connection with operation of the business. Thereafter Floyd Nollmeyer continued to operate the business as a corporation until it closed its doors. On January 1, 1966, the unpaid balance owing the Whites under the conditional sales contract was $22,553.95, and no monthly payments were made on this indebtedness thereafter. Floyd Nollmeyer continued to operate the business through the month of January 1966, but there-

after he closed its doors, ceased to do business, and voluntarily offered to return the furniture, fixtures, equipment, and stock of merchandise on hand to the Whites together with possession of the business premises. The Whites declined this offer.

In the meantime, on January 7, 1966, Floyd Nollmeyer and his wife, Leah Rae Nollmeyer, made the following transfers on property: (1) Assigned Floyd Nollmeyer one-quarter interest in his deceased mother's estate to Henry Nollmeyer and (2) conveyed by warranty deed all their interest in a section of land in Gallatin County to Marilyn Ruth Nollmeyer, subject to an existing mortgage. The consideration for these transfers was $16,000 cash, part of which was applied to payment of delinquent taxes and delinquent mortgage payments on the section of land in Gallatin County and the balance applied on various debts of Floyd Nollmeyer. No part of the $16,000 was retained either by Floyd Nollmeyer or his wife.

On February 4, 1966, White served written notice on Floyd Nollmeyer of his default in payments under the conditional sales contract, of the Whites' exercise of their option to declare the entire unpaid balance immediately due and payable, and that upon non-payment of the entire unpaid balance suit would be commenced immediately to collect the same. On the same day suit was commenced against both Floyd Nollmeyer and Nelson and an attachment was levied upon the contents of the business where the drugstore was located, among other things. On February 28, 1966, the Whites secured a default judgment against Floyd Nollmeyer only, in the amount of the entire unpaid balance owing under the conditional sales contract ($22,553.35), interest, attorney's fees, and costs. On May 13, 1966, the merchandise and fixtures previously attached were sold at sheriff's sale under execution and the proceeds, after deduction of costs of sale, were turned over to the Whites' attorneys. The gross amount realized at the sheriff's sale was $7,200, and the net proceeds turned over to Whites' attorneys was $5,726.63.

In the meantime on March 1, 1966, the other defendant, Nelson, answered the Whites' complaint with substantially a crossclaim against his co-defendant, Floyd Nollmeyer, and a third-party complaint against Henry Nollmeyer and Marilyn Ruth Nollmeyer, seeking to set aside two property transfers from Floyd Nollmeyer to them and to hold the property in trust for satisfaction of the claims of Floyd Nollmeyer's creditors; Nelson also sought to recover his attorney's fees and costs from Floyd Nollmeyer based on the "save harmless" agreement previously mentioned.

Suffice it to say at this point that the evidence touching on the intent behind the transfers and the value of the property transferred was sharply in conflict.

Trial was had before Judge Lessley without a jury. He entered findings of fact and conclusions of law and the two judgments previously mentioned. Following the trial court's denial of Nelson's exceptions to the trial court's findings, conclusions and judgments, Nelson appealed from both judgments rendered against him.

Nelson sets forth the following issues for review upon this appeal:

(1) Are the findings of fact supported by the evidence?

(2) Are the conclusions of law supported by the findings of fact?

(3) Are the Whites entitled to recover a money judgment against Nelson or is their remedy restricted to repossession and sale of the property under the conditional sales contract?

(4) Are the property transfers from Floyd Nollmeyer to Henry and Marilyn Ruth Nollmeyer invalid under the Uniform Fraudulent Conveyance Act and therefore subject to being set aside and used to satisfy Floyd Nollmeyer's creditors?

(5) Should the amount recovered by the Whites under execution sale be deducted from the amount of their judgment against Nelson?

(6) Should judgment have been entered in favor of Nelson

against Floyd Nollmeyer on Nelson's cross-claim for his attorney's fees and costs?

From the foregoing statement of issues by Nelson, it is apparent we are concerned with two judgments which were entered and an additional judgment sought by Nelson on this appeal: (1) the judgment of the Whites against Nelson for the unpaid balance owing under the conditional sales contract; (2) the judgment in favor of Henry and Marilyn Ruth Nollmeyer against Nelson refusing to set aside the two property transfers; and (3) the judgment sought by Nelson against Floyd Nollmeyer for attorney's fees and costs based on the "save harmless" agreement. Our discussion will be based on these judgments with the issues assigned by Nelson for review discussed as they apply to each judgment.

Initially we direct our attention to the Whites' judgment against Nelson for the entire unpaid balance owing under the conditional sales contract. As to this judgment there is no factual dispute, but only a disagreement as to the legal consequences that flow from the undisputed facts. Nelson's argument, as we understand it, is that this judgment is erroneous because: (1) it is prohibited by section 74-207, R.C.M. 1947; (2) all the consideration for the contract was seized and sold by the Whites, thereby bringing their rights and remedies to an end prior to judgment against Nelson; (3) the Whites' judgment against Floyd Nollmeyer bars a subsequent judgment against Nelson on the same obligation; and (4) in any event, the judgment against Nelson should be reduced by the amount recovered by the Whites upon execution sale under their judgment against Floyd Nollmeyer. We shall proceed to examine these points individually.

The essence of Nelson's first point is that section 74-207 provides the sole and exclusive remedy available to a seller against a defaulting buyer under a conditional sales contract; that by the terms of this statute where the buyer pays at least one-third of the original purchase price and returns the prop-

erty to the seller without expense to him, a money judgment for any remaining amount owed on the purchase price is prohibited; and that such prohibition is a matter of public policy that cannot be altered by any provision in the conditional sales contract authorizing such prohibited remedy in any form.

The parties concede that the instant case is governed by section 74-207 rather than the Uniform Commercial Code which became effective January 1, 1965. Insofar as it is pertinent to the problem involved in the instant case, section 74-207 provides that upon default by the buyer under a conditional sales contract, the seller may (1) recover possession of the property in an action of claim and delivery; (2) if the contract so provides, have the sheriff seize and sell the property and out of the proceeds first pay the expenses of sale, secondly pay off the amount due under the contract, and thirdly pay over any remaining balance to the purchaser; (3) bring an appropriate action to recover the remaining balance due under the contract if the proceeds of sale are insufficient to discharge the indebtedness under the contract. The statute concludes with this language: "Provided, however, that if said vendee shall surrender possession of said personal property to said vendor without cost and expense to said vendor, and provided also, that said vendee has paid at least thirty-three and one-third per cent (33⅓%) of the original purchase price of said personal property with interest, said vendor shall not be entitled to any deficiency judgment against said vendee upon said contract * * *."

The statute in question, absent the concluding language quoted above, was enacted by the Legislature in 1919 (Ch. 146, L.1919) and remained in that form until 1935, when it was amended by enactment of a single statute incorporating the then existing statute plus the concluding language quoted above. (Ch. 112, L.1935) Prior to the 1935 amendment this Court had indicated that upon default by the buyer under a conditional sales contract, the seller could (1) treat the contract as abrogated and retake the property, (2) treat the

contract as existing but broken by the buyer and maintain an action for damages for the breach, or (3) waive the breach and insist upon payment of the purchase price. First National Bank of Missoula v. Marlowe, 71 Mont. 461, 230 P. 374. It should be noted that the second remedy indicated in the Marlowe case is not referred to in the statute at all, leading to the implication, at least, that the statutory remedies in section 74-207 prior to the 1935 amendment were not the sole and exclusive remedies available to the seller. It should also be observed that the statute as it then existed dealt primarily with recovery of property under a conditional sales contract either (1) by suit in claim and delivery, or (2) by summary repossession and sale pursuant to provision therefor in the terms of the contract; in the latter case subsequent suit and deficiency judgment were authorized if the proceeds of sale proved insufficient to discharge the indebtedness under the contract. The 1935 amendment enacted the statute verbatim as it then existed plus the concluding language quoted above; it did not enact the concluding language in a separate statute nor did it make any change in the language of the existing statute. Since 1935 the statute has remained unchanged. The foregoing leads us to the conclusion that the Legislature intended (1) that the remedies covered in the statute were not the sole and exclusive remedies available to a seller under a conditional sales contract upon default by the buyer, and (2) that the prohibition on deficiency judgments contained in the statute applied only to remedies contained therein.

In the instant case the remedy pursued by the sellers was an action for breach of contract by reason of non-payment of the purchase price under the terms of the contract by the buyers, the measure of damages being the amount owing by the buyers under the contract. Section 17-303, R.C.M.1947. Ancillary to this action, the sellers attached, among other things, the fixtures and merchandise on hand in the business premises of the buyers. In short, the sellers did not pursue any

remedy contained in section 74-207 but instead pursued another available remedy outside the ambit of the statute in question, specifically the second remedy indicated in the Marlowe case, supra. This Court has heretofore specifically held that a seller under a conditional sales contract is not limited to the remedy of going after the security but may institute suit to recover the balance due unless such remedy is foreclosed by the terms of the contract. Bollinger v. Jarrett, 146 Mont. 355, 406 P.2d 834. Whatever may be said of the rationale and authorities relied upon to reach that result in the *Bollinger* case, we are in accord with such result. This case is much stronger than the *Bollinger* case on the facts in that here we not only have no limitation in the contract on the remedy pursued but also a specific contract provision authorizing the seller to pursue such remedy.

For the foregoing reasons, we hold that section 74-207 does not prohibit the judgment secured by the Whites against Nelson.

Nelson next contends that the Whites' judgment against him is erroneous because the Whites seized and sold all the consideration for the contract under their attachment, judgment and execution sale against Floyd Nollmeyer thereby exhausting their rights and remedies under the contract prior to their judgment against Nelson. But was all the consideration for the contract seized and sold? We think not. The consideration for the contract was not merely the tangible personal property used in the business which would change in kind and character during the life of the contract and which the trial judge found had changed from that originally received by the buyers under the contract. The contract covered the sale of an established and "going" business. The consideration for the contract was the mutual promises of the parties contained therein, essentially the unconditional promise of the buyers to buy that business for an agreed price payable according to fixed terms and the reciprocal promise of the sellers to sell the business on that basis to the buyers. Additionally, one of

the mutual promises forming part of the consideration for the contract was the agreement granting the sellers the remedy they have pursued here. For these reasons, this argument of Nelson's likewise fails.

We next direct our attention to Nelson's third argument, viz., that the entry of the default judgment against Floyd Nollmeyer bars entry of a subsequent judgment against Nelson on the same obligation. This argument is bottomed on the proposition that the obligation involved here is a joint obligation of Floyd Nollmeyer and Nelson and that judgment against one of two joint obligors forecloses a later judgment against the other. This, of course, is the common law rule and is based upon the principle of waiver. In Montana this common law rule has been changed by statute. Section 58-202, R.C.M.1947, provides: "All joint obligations and covenants shall hereafter be taken and held to be joint and several obligations and covenants." Because the obligation of Floyd Nollmeyer and Nelson in the instant case is several as well as joint, successive judgments against each in the amount of the total obligation of both is permissible.

Of course, the Whites are not entitled to collect both judgments in full from each of the judgment debtors for to do so would permit them to recover double the amount of the obligation owed them; they are only entitled to collect the total amount of the obligation owed them, regardless of the number of judgments secured and regardless of which judgments are used to effect collection, in whole or in part. The trial judge recognized this and attempted to meet this by entry of the following conclusion of law: "That the plaintiff (the Whites) has obtained a default judgment in this Court against the co-defendant, Floyd G. Nollmeyer, for the amount of the unpaid balance on the contract of purchase, plus costs and attorney's fees, and that the said contract is a joint and several obligation of the Defendants John Porter Nelson II and Floyd G. Nollmeyer, and that a satisfaction or partial satisfaction

of either judgment for the amount of the unpaid balance due on the contract shall work to the same extent as a satisfaction or partial satisfaction of the other judgment." [Words in parentheses added.]

The difficulty with this is that it appears in the conclusions of law in the Whites' action against Nelson only and does not appear in either judgment. As the Conclusions of Law are no part of the judgment, there is nothing in either judgment to indicate that satisfaction in whole or in part of either judgment constitutes whole or partial satisfaction of the other judgment to the same extent. We hold, therefore, that appropriate language to this effect should be incorporated in both judgments and remand to the district court for this purpose.

We are mindful that in so doing we are, in effect, amending a judgment from which no appeal was taken. However, the district court had the power to revise the judgment against Floyd Nollmeyer in this respect at any time prior to entry of judgment against Nelson under the circumstances of this case (Rule 54(b), M.R.Civ.P.) and should have done so. As Nelson had no right to appeal from the judgment against Floyd Nollmeyer and as the failure to incorporate the language indicated above in that judgment necessarily affects the judgment against Nelson, this Court has the power to review and correct the judgment against Floyd Nollmeyer to this extent as an incident to affording Nelson relief upon his own appeal. Rule 2, M.R.Civ.App.P.

We pass on to Nelson's fourth argument, viz., that the judgment of the Whites against him should be reduced in the amount recovered by the Whites upon execution sale under their judgment against Floyd Nollmeyer. From what has been said heretofore it is clear that the Whites can recover only the amount of the total obligation owed them under the conditional sales contract and no more. Incorporation of the provision indicated in the second preceding paragraph in both

judgments will remedy Nelson's complaint here and render the error, if any, harmless.

We now direct our attention to the second judgment involved in this appeal, viz. the judgment refusing to set aside the two property transfers from Floyd Nollmeyer and his wife to Henry and Marilyn Ruth Nollmeyer. The two property transfers involved were made approximately one month before Floyd Nollmeyer closed the doors of his pharmacy business in Bozeman and the Whites filed this suit against him and Nelson under the conditional sales contract previously mentioned. These property transfers consisted of the following: (1) an assignment by Floyd Nollmeyer and his wife of Floyd's quarter interest in his deceased mother's estate to Henry Nollmeyer and (2) a conveyance of a section of land in Gallatin County, subject to an outstanding mortgage of approximately $18,000, from Floyd Nollmeyer and his wife, the owners in joint tenancy, to Marilyn Ruth Nollmeyer. The cash consideration for the transfers was $16,000. Nelson contends that these transfers were invalid under the Uniform Fraudulent Conveyance Act, section 29-101 through 29-113, R.C.M.1947, because: (1) both the transferor and the transferees had the actual intent to hinder, delay or defraud Floyd Nollmeyer's creditors, and (2) both transfers were constructively fraudulent because they were made without fair consideration and rendered Floyd Nollmeyer insolvent. The thrust of Nelson's argument is that the trial court's findings of fact, upon which the judgment refusing to set aside these transfers is based, are not supported by the evidence.

The Supreme Court in an equity case not only has the function of reviewing the law involved but also reviews the evidence to the extent of determining whether the findings of fact by the trial court are supported by substantial evidence. Section 93-216, R.C.M.1947; Bender v. Bender, 144 Mont. 470, 397 P.2d 957; Kyser v. Hiebert, 142 Mont. 466, 385 P.2d 90.

The evidence surrounding the transfers of property in ques-

tion shows that for several years preceding the events involved in this action, Floyd Nollmeyer had been in the cattle business and had been financing this through the First National Bank of Bozeman. In December 1965, Floyd Nollmeyer sold his cattle, the proceeds of the sale were applied to his indebtedness to the bank, the bank indicated that it would not continue to finance Floyd Nollmeyer's cattle operation, and the bank refused to make a new loan. Floyd Nollmeyer then attempted to sell his quarter interest in his mother's estate and the section of land in Gallatin County, subject to the mortgage previously mentioned. He first tried to sell this property to his brother, Richard Nollmeyer, for $20,000 but Richard couldn't borrow the money to purchase it. He then telephoned his other brother, Henry Nollmeyer, to see if Henry would buy the property. Henry Nollmeyer consulted his banker, his attorney, and his wife and thereafter advised Floyd Nollmeyer that he was only willing to pay $16,000 cash for it. Henry Nollmeyer understood at this time that Floyd Nollmeyer was in financial difficulties, had been turned down on a loan by the bank and would have to sell the property to pay his creditors, but he had no knowledge of the existence of the sales contract under which Floyd Nollmeyer was purchasing the White Pharmacy nor of any liability, contingent or otherwise, to Nelson. Floyd Nollmeyer accepted Henry Nollmeyer's $16,000 cash offer and the sale was completed on January 7, 1966. A cashier's check on Henry Nollmeyer's Sidney bank in that amount was sent to Floyd Nollmeyer's attorneys in Bozeman, the delinquent taxes and the delinquent mortgage payments on the Gallatin County section of land were paid, and the balance was applied to various debts of Floyd Nollmeyer. Neither Floyd Nollmeyer nor his wife received any of the proceeds of the sale. Of the cash consideration paid for the property, $11,000 was to apply to the purchase of the quarter interest in the estate and $5,000, plus assumption of the mortgage in the approximate amount of $18,000, was to apply on the Gallatin County section

of land. The payment of $5,000 cash plus the assumption of an $18,000 mortgage established a consideration of approximately $23,000 for the Gallatin County section of land. This is a "short" section of 616 acres, establishing an approximate price of $37.50 per acre, including improvements. The evidence was in sharp conflict as to the value of this land. It had been purchased in 1949 for $20,000 and Floyd Nollmeyer had placed a $45,000 value on it in his financial statement shortly before the transfer. Six witnesses testified as to value at the trial. The four witnesses who testified for Floyd Nollmeyer were Bill D'Ewart, who valued the land including improvements at $35 per acre; M. D. Armstrong, who valued the land at between $20 to $35 per acre; Verna Lee Landis, who valued the land at $30 or $35 per acre, including improvements; and Johnny Robinson, who valued the land at $35 per acre, including improvements. The two witnesses who testified for Nelson valued the entire section of land at $50,000. All witnesses as to value owned land near the section in question.

As to the value of Floyd Nollmeyer's quarter interest in his mother's estate, no testimony was offered by any party as to the value of specific items of property included in the estate. Henry Nollmeyer, the executor of the estate, in his petition for appointment filed November 26, 1965, estimated the value of the estate property at $87,000 and subsequent inventories and appraisements made in March and April 1966, showed the total appraised value of the estate as $89,746.32. Henry Nollmeyer testified that at the time of purchasing Floyd Nollmeyer's quarter interest in the estate he calculated that interest to be about $18,000 based upon appraised values in his father's estate, less known and estimated expenses and taxes, but $11,000 was all he was willing to pay for it. Richard Nollmeyer, who had previously served as co-administrator of his father's estate and co-guardian of his mother, both of which estates involved the property in question here, testified that

$11,000 cash was a reasonable price for Floyd's quarter interest under the circumstances.

It should also be noted that the instruments of transfer of the properties in question were recorded within a few days of completion of the sale.

After application of the proceeds of the transfers to his debts, Floyd Nollmeyer still had remaining personal obligations to the First National Bank of Bozeman on notes, to the Whites upon the conditional sales contract on the drugstore, and contingent liability to Nelson under the "save harmless" agreement. His indebtedness to the bank at that time was slightly less than $11,000. The corporation, "Bozeman Pharmacy Inc." also was substantially indebted to trade creditors, but these were debts of the corporation only. Floyd Nollmeyer also owned a house in Bozeman, a car, and farm machinery but the balances due on liens approximately equaled their values.

To apply against his personal debts Floyd Nollmeyer had unsold crops which eventually netted $6,449.64 and which paid off his "ranch note" at the First National Bank in full, with the remainder being applied to the "pharmacy note" on which he, Nelson and Bozeman Pharmacy Inc., were jointly and severally liable. After application of the proceeds from the unsold crop, Floyd Nollmeyer's total indebtedness to the bank was reduced to $4,338.93 with the bank holding a security agreement on certain items of farm machinery therefor.

In April or May 1966, following the two transfers in question, Henry Nollmeyer entered into an oral agreement with Leah Rae Nollmeyer, Floyd's wife, whereby she was to farm the estate land located in Park County on a crop share basis with one-third going to the estate as owner and two-thirds to her as tenant. Henry Nollmeyer also rented the section of land in Gallatin County to her on a cash rental basis. Floyd Nollmeyer was doing the farm work involved with some help from his children at the time of trial. Floyd Nollmeyer had also transferred his cattle brand to his wife in May, 1966.

Following the two transfers in question, Floyd Nollmeyer had remaining assets (exclusive of his house, car and farm machinery) consisting of merchandise for sale in the pharmacy of a cost price of $21,142.10, furniture and fixtures presumably valued at $17,500, and accounts receivable owing the pharmacy of between $6,000 and $7,000 estimated to be about 85% collectible. The total of these items establishes a remaining asset value of at least $43,500. It should be noted that the merchandise, furniture and fixtures, brought only $7,200 at a sheriff's sale under execution on the Whites' judgment against Floyd Nollmeyer.

The outstanding liabilities of Floyd Nollmeyer consisted of his remaining indebtedness to the bank of approximately $11,000, his indebtedness to the Whites under the conditional sales contract of approximately $22,500, and his contingent liability to Nelson under the "save harmless" agreement which would be discharged on payment of the indebtedness to the Whites. Thus his total liabilities would approximate $33,500.

On the basis of the evidence, the district court found in effect, that there was no intent, either actual or presumed, on the part of either the transferor or transferees to hinder, delay, or defraud creditors; specifically found fair consideration for the transfers; found that the transfers did not render Floyd Nollmeyer insolvent but in fact improved his financial position; and that no bad faith on the part of Floyd Nollmeyer was involved in the transfers.

Nelson points to numerous "badges of fraud" which he contends established fraudulent intent. Among other things, Nelson enumerates gross inadequacy of consideration, transfer in anticipation of suit, insolvency after transfer, retention of possession by the transferor of the property transferred, and subsequent employment of the transferor by the transferees. Nelson further contends that because of the close family relationship between the transferor and the transferees greater weight must be given these "badges of fraud" than otherwise.

On the other hand, the transferees point to certain "indicia of good faith" as establishing the absence of fraudulent intent in the transfers. Among other things, they point to the following: a substantial cash payment paid to the transferor; application of the entire proceeds to the transferor's debts; lack of secrecy in the transaction; application of Leah Rae Nollmeyer's interest in part of the property transferred to Floyd Nollmeyer's debts; sale of the fractional interest in the estate to the holder of an existing fractional interest therein, who presumably would be willing to pay more than a stranger; and the apparent existence of sufficient remaining assets with which to discharge the transferor's remaining indebtedness.

Fraudulent intent is a question of fact. Section 29-210, R.C.M.1947. As such it is to be determined by the trier of the facts, in this case the district court. In the instant case the district court found, in effect, that there was no fraudulent intent. As heretofore noted, our function is to determine whether there is substantial evidence to support this finding.

We hold that there is substantial evidence to support the district court's finding of good faith and absence of fraudulent intent. In addition to evidence supporting the foregoing "indicia of good faith," the record clearly shows that when the bank refused further loans, Floyd Nollmeyer was in a difficult financial position requiring a substantial sum of immediate cash; that the most promising, if not the only, source from which the needed funds could be secured was the sale of his fractional interest in his mother's estate and his and his wife's interest in the Gallatin County land; that he sold the same for the highest cash price immediately obtainable; and that he applied the entire proceeds to his various debts thus improving his current financial position. It is true that in so doing he did not apply everything to his indebtedness in connection with the pharmacy business but it should be remembered that he owed substantial sums on his cattle operation to the bank who could hardly be expected to withhold legal action in the ab-

sence of substantial payments thereon. Preferential payments to one creditor over another is permissible under such circumstances. Section 18-104, R.C.M.1947. Additionally, it is inferable that Floyd Nollmeyer did not anticipate the action the Whites would take under the conditional sales contract and thought there were sufficient assets in the drugstore business to satisfy them in full, thereby nullifying any possible contingent liability to Nelson under the "save harmless" agreement.

On the issue of fair consideration for the transfers, the test to be applied is whether the disparity between the true value of the property transferred and the price paid is so great as to shock the conscience and strike the understanding at once with the conviction that such transfer never could have been made in good faith. Hart-Parr Co. v. Schafer, 73 Mont. 429, 236 P. 675. The record is replete with evidence establishing a $37.50 per acre value on the Gallatin County section with improvements which approximates the $5,000 price paid plus the assumption of an $18,000 mortgage. As to Floyd Nollmeyer's undivided fractional interest in his mother's estate, it is questionable whether it had a "market value" in the usual sense of the term. There are many indeterminable factors that influence the value of an heir's fractional interest at the commencement of a probate such as will contests, outstanding debts of the deceased, income during the course of probate, the amount of inheritance and estate taxes payable, the cost of administration, the duration of the probate proceeding, and the possible necessity of liquidation of assets during the course of probate and many others. In the instant case there is the additional problem of dealing with one heir entitled to a fractional interest who is suffering from mental illness. We cannot say that these risks and uncertainties together with a reasonable discount to present cash value, do not justify an $11,000 cash consideration for a fractional interest estimated to possess a true value of $18,000 at the conclusion of the probate, based upon a prior estate proceeding involving the same property.

It is also to be noted that there was no testimony at all as to the value of specific items of property in the estate. For the foregoing reasons we are unable to say that the disparity between the true value of the property transferred and the price paid is so great as to shock the conscience and establish the conviction that the transfer could never have been made in good faith. Hart-Parr Co. v. Schafer, supra.

On the issue of insolvency of Floyd Nollmeyer following the transfers, to all appearances Floyd Nollmeyer had assets of at least $43,000 to apply to liabilities of $33,500 establishing a $10,000 margin. Due to the Whites' unanticipated subsequent action, the assets (excepting accounts receivable) brought only $7,200 at a sheriff's sale. In effect, the unanticipated action of the Whites shattered the value of a major portion of Floyd Nollmeyer's assets by forced sheriff's sale, leaving him with a substantial deficit of liabilities over assets rather than a comfortable excess of assets over liabilities. The district court found upon substantial evidence that Floyd Nollmeyer could not have anticipated the action the Whites took against him following the transfers and that he was therefore justified in assuming that all obligations under the conditional sales contract could be satisfied from the pharmacy assets. Thus there would be no contingent liability to Nelson under the "save harmless" agreement.

For the foregoing reasons we hold that the judgment refusing to set aside the two property transfers was correct and it is affirmed.

The final matter for determination upon this appeal is whether the trial court should have entered judgment in favor of Nelson and against Floyd Nollmeyer on Nelson's cross-claim for attorney's fees and costs incurred by him in defending himself against the Whites' action. Nelson's cross-claim is based on the "save harmless" agreement. Nelson's prayer for relief requests such an award, the existence of the "save harmless" agreement is admitted in the pleadings and estab-

lished in the findings of fact by the court, and a motion to amend the conclusions of law to include such an award was made by Nelson and denied by the court. With the exception of the bald statement in Nelson's brief that such judgment should be granted, there is nothing contained in any of the briefs on this point. Under the circumstances, we see no reason why damages should not be awarded Nelson on his cross-claim against Floyd Nollmeyer in the amount of a reasonable attorneys' fee for the services of Nelson's attorneys herein together with taxable costs and disbursements provided by statute. We remand to the district court for inclusion of an appropriate conclusion of law fixing the amount of such attorneys' fees and entry of appropriate judgment accordingly.

This cause is remanded to the district court for modification in accordance with this opinion and as modified, the judgments are affirmed.

THE HONORABLE CHARLES LUEDKE, District Judge, and MR. JUSTICES ADAIR, CASTLES and JOHN C. HARRISON, concur.

MR. CHIEF JUSTICE JAMES T. HARRISON, not participating.