F. Ernest GRANSBURY and Walter Stephan, Appellants,

v.

UNITED BUILDING SUPPLY, INC., Appellee.

UNITED BUILDING SUPPLY, INC., Cross-Appellant,

v.

F. Ernest GRANSBURY and Walter Stephan, Cross-Appellees.

No. 2085.

Supreme Court of Alaska.

Feb. 18, 1975.

Ernest Z. Rehbock, Anchorage, for appellants and cross-appellees.

Leroy J. Barker, Robertson, Monagle, Eastaugh & Bradley, Anchorage, for appellee and cross-appellant.

## OPINION

Before RABINOWITZ, C. J., and CONNOR, BOOCHEVER and FITZGERALD, JJ.

FITZGERALD, Justice.

We decide in this case the nature of the title to real property acquired by a purchaser at execution sale.

Briefly the facts are as follows. In early 1967 John Withers owned two lots which had been appraised at $8,000 in 1966. He owed approximately $1,500 to Central Alaska Utilities, Inc. and in excess of $3,000 to Kenneth Muller for back rent. When Muller insisted upon payment, Withers mentioned his two lots.[1] There was talk that Muller would take one lot for the past-due rent and pay Withers $4,400 for the other. Before the negotiations were completed, Muller left Anchorage on a business trip. On his return he learned Withers had moved leaving no forwarding address. On February 27, 1967, Muller filed suit to collect the rent and attached the two lots. However, on February 21 Marvin Briggs recorded bills of sale purportedly conveying the lots from Withers to Briggs.

Russell Arnett, who in 1967 was Muller's attorney, testified at trial from notes of conversations with Briggs that:

Withers told [Briggs] he wanted to go to Viet Nam or someplace and needed $500.00 which Briggs gave him for the 2 [bills of sale]. Withers discouraged him from seeing an attorney. Withers was to give Briggs a warranty deed, later in turn for a trust deed from Briggs. Briggs got people holding the assessment for approximately $2,000.00 to hold off suit.

The "assessment" apparently related to Withers' debt on a utilities account.

Sometime before May 10, 1967, Arnett was notified by Briggs of these sales, and tentative negotiations between Muller and Briggs regarding the property took place between that date and July, 1967, after which there was no further communication from Briggs.

On May 25, 1967, United obtained a default judgment against Briggs for $8,116.39 but did not attach the two lots until August 25, 1970. In the interim, Muller had acquired a quitclaim deed to the two lots at an execution sale on June 30, 1969. On July 7, 1970, Muller executed a quitclaim deed to Gransbury. On October 2, 1972, United obtained a quitclaim deed for the lots at its execution sale against Briggs.

The superior court found that:

The transaction between Withers and Briggs was a fraudulent conveyance meeting the test set forth under A.S. 34.-40.010.[2]

Blumenstein v. Phillips Insurance Center, Inc., 490 P.2d 1213 (Alaska 1971).

The trial court also found that United Building had notice of the conveyances from Withers to Briggs but that United was without knowledge of any of the facts of the transaction or of any claim that the conveyance was fraudulent, void or claimed to have been void. The court concluded as a matter of law that:

The fraud which vitiates title under AS 34.40.010 must be asserted directly against the defendant. United Building who is a successor in title to such a defendant, Briggs, and who took without any knowledge of the fraudulent nature of the prior conveyance, is a bona fide

---

1. Lots 23A and 33B of the Campbell Lakes Subdivision, Anchorage Recording Precinct.

2. AS 34.40.010 provides:

   *Invalidity generally.* A conveyance or assignment, in writing or otherwise, of an estate or interest in lands, or in goods, or things in action, or of rents or profits issuing from them or a charge upon lands, goods, or things in action, or upon the rents or profits from them, made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands, or a bond or other evidence of debt given, action commenced, decree or judgment suffered, with the like intent, as against the persons so hindered, delayed, or defrauded is void.

purchaser and its title is not voidable under AS 34.40.010.

On this basis, the court found United to be the owner in fee simple of the lots. Costs and attorney fees were accordingly awarded to United. It is from this judgment that the parties have appealed.

At this time Gransbury argues that the superior court correctly found that the conveyance to Briggs was fraudulent but incorrectly ruled that United could take the property free of encumbrances. The purchaser by quitclaim deed at his own execution sale, Gransbury asserts, can take no better title than his predecessor. In addition, Gransbury argues that the superior court mechanically awarded attorney fees to the prevailing party and that such an award is an abuse of discretion[3] in the context of a quiet title action.

United, on the other hand, argues that the finding of a fraudulent conveyance was clearly erroneous, that in any event a purchaser without notice at an execution sale obtains an unclouded title, and that the award of attorney fees was proper.

■ At the outset we conclude that the superior court's finding that the Withers-to-Briggs conveyance was fraudulent was not clearly erroneous. It would be reasonable to infer from Withers' hasty and unexplained departure that the conveyance was "made with the intent to hinder, delay or defraud creditors." AS 34.40.010. We have also held that when a conveyance is alleged to have been made fraudulently, the court may consider:

> whether the disparity between the true value . . . and the price paid is so great as to shock the conscience and

strike the understanding at once with the conviction that such transfer never could have been made in good faith.[4]

Since Briggs informed Arnett that he had paid $500 for the lots which were worth $8,000 and against which there was an assessment of $1,500, we conclude that the superior court's finding was amply supported by the evidence.

■ The determination of the validity of United's quitclaim deed is controlled by AS 34.25.040(c) which defines the legal effect of a deed resulting from a judicial sale. The statute provides, in relevant part:

> The deed, when executed and delivered, is sufficient to convey all the title of the judgment debtor or other person affected by the order or decree in the premises sold to the purchaser at the sale.

Under the statute, the purchaser at an execution sale acquires no better title than the judgment debtor had.

The statute is in accord with substantial precedent. *See* Harvey v. Whyte, 158 Cal.App.2d 685, 323 P.2d 162, 164 (1958), which stated:

> A purchaser at an execution sale is chargeable with notice that he acquires no better title than the judgment debtor has; the rule of *caveat emptor* applies with all its force to such sales.[5]

■ The title which Briggs, the judgment debtor, had at the time of the execution sale was defective due to the fraudulent conveyance. United, the purchaser at the execution sale, therefore acquired a defective title, no better than that of the judgment debtor.

---

3. Reference is made to Malvo v. J. C. Penney Company, Inc., 512 P.2d 575 (Alaska 1973), in which we rejected:
   . . . the proposition that the prevailing party in each case should automatically be awarded the full amount of the attorney fees incurred.
   512 P.2d at 586.

4. Blumenstein v. Phillips Insurance Center, Inc., 490 P.2d 1213, 1220 n. 8, (Alaska 1971), *quoting* White v. Nollmeyer, 151 Mont. 387, 443 P.2d 873, 883 (1968).

5. *See also* Nussbaumer v. Superior Court in and for the County of Yuma, 107 Ariz. 504, 489 P.2d 843, 847 (1971); Lebrecht v. Beckett, 96 Ariz. 389, 396 P.2d 13, 16 (1964); Sarkeys v. Russell, 309 P.2d 723, 726 (Okl. 1957); Dahl v. Prince, 119 Utah 556, 230 P.2d 328, 331 (1951); Anderson Buick Co. v. Cook, 7 Wash.2d 632, 110 P.2d 857, 860 (1941); MacGinniss Realty Co. v. Hinderager, 63 Mont. 172, 206 P. 436, 439 (1922); Hexter v. Schneider, 14 Or. 184, 12 P. 668, 670 (1886).

■ Gransbury should not be estopped from asserting the fraudulent title of United's predecessor. It is proper for Gransbury to assert the fraud despite Muller's failure to include Briggs as a defendant for, from the standpoint of the defrauded creditor (Muller), title to the lots remained in Withers.[6] Nor does Gransbury's failure to inform United of his claim of fraud give rise to an estoppel. Gransbury, a non-lawyer, informed United of his interest; he put United on actual notice of a competing claim.[7]

■ We must conclude, therefore, that United was improperly awarded title to the lots in question. The decision of the superior court with respect to title in the two lots, as well as to costs and attorney fees,[8] is reversed. The case is remanded for proceedings in accordance with this opinion.

ERWIN, J., not participating.

BOOCHEVER, Justice (dissenting).

I dissent in this case because I believe that the judgment of the superior court in favor of United Building Supply, Inc. (United) should be affirmed. The case decided by the superior court was an equitable one to quiet title to certain real property. Both from the standpoint of legal rights and equitable rights, United should prevail.

On February 21, 1967, one week prior to Muller commencing his action against Withers, the original owner of the property, a conveyance from Withers to Briggs had been recorded placing Muller on notice that title had been conveyed to Briggs. Moreover, prior to securing a judgment against Withers, Muller had actual knowledge that the property had been conveyed by Withers to Briggs. Nevertheless, Muller did not include Briggs as a defendant in his suit. When Muller bid in on the property at execution sale based on the judgment he obtained against Withers, he obtained no title to the property in question for it was not owned by Withers at that time, and Muller was aware of that circumstance. A deed resulting from a judicial sale "is sufficient to convey all the title of the judgment debtor or other person affected by the order or decrees in the premises sold to the purchaser at the sale".[1] Withers, the judgment debtor, had no title to the property so that Muller obtained no title as a result of the execution sale. Briggs was not affected by the order or decree since he was not made a party to the litigation although Muller had knowledge of his interest in the property. Ac-

---

6. *See* In re Luftman, 245 F.Supp. 723, 725 (S.D.N.Y.1965); Strangman v. Duke, 140 Cal.App.2d 185, 295 P.2d 12, 17 (1956).

7. *See* James v. Nelson, 90 F.2d 910, 912, 918, 9 Alaska 117, 135 (9th Cir. 1937); Kierulff v. Metropolitan Stevedore Company, 315 F. 2d 839, 842–844 (9th Cir. 1963).

8. We are inclined to agree with appellant Gransbury that the trial court should not mechanically award attorney fees to the prevailing party in a quiet title action; but that question is, in the light of our decision, moot.

1. The fact that Muller could have contended that the conveyance from Withers to Briggs was void cannot affect the rights of innocent third parties like United who acquired rights prior to Muller's placing them on notice of his claim of fraud. AS 34.40.010 provides that a "conveyance or assignment . . . of an estate or interest in lands . . . made with the intent to hinder, delay, or defraud creditors or other persons . . . as against the persons so hindered, delayed, or defrauded is void." However, it is not self-executing. There must be action taken to set aside such a conveyance and a determination made by a court before the conveyance is voided. Despite the use of the word "void" in the statute then, it must be construed as voidable. Any other interpretation would render AS 34.40.100 a nullity in the fraudulent conveyance context. That statute provides that the title of a "purchaser for a valuable consideration" will be unaffected "unless it appears that the purchaser had previous notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of the grantor." Thus, even if the grantor conveyed with the intent to defraud his creditors, the conveyance would be effective—not void—to a "purchaser for a valuable consideration" taking without notice. *See* Royal Indemn. Co. v. McClendon, 64 N.M. 46, 323 P.2d 1090 (1958).

cordingly, Gransbury and Stephan took nothing by their quitclaim deed from Muller.

Looking to the other party to the litigation, United, its examination of the records would only reveal that Briggs was the titleholder of record to the property when United obtained a quitclaim deed for the lots at its execution sale. Moreover, prior to proceeding with the execution sale, United's attorney, Hammond, had a conference with Mr. Gransbury, the plaintiff below. Gransbury endeavored to purchase United's interest in the property contending that the land could not be conveyed by Withers to Briggs by means of a document designated as a bill of sale. At that time, however, Gransbury made no claim that he thought the transfer was a fraud against creditors or that there had been anything fraudulent about the transaction. United first became aware of the claim pertaining to a fraudulent transfer when complaint was served upon it in the quiet title suit filed on June 24, 1971. The contention that real property cannot be conveyed by a document entitled, Bill of Sale, has now been abandoned.[2] The quiet title suit was filed by Gransbury on August 28, 1973, almost three years after United had purchased the property at execution sale and ten months after United had obtained the deed from the Department of Public Safety based upon that sale.

Under these circumstances, Gransbury is estopped from raising the issue of fraudulent transfer from Withers to Briggs. If such a claim were to be maintained, it should first have been raised by Gransbury's predecessor in title, Muller, when he had notice of the Withers to Briggs deed prior to his purchase of the property at execution sale on his judgment obtained against Withers. It should have been raised a second time when Gransbury became aware of United's intention to levy execution against the property. Gransbury made no effort to intervene in that litigation and affirmatively misled United as to the nature of his contention pertaining to a cloud on the title. Since both Muller and Gransbury had adequate notice in time to prevent the subsequent events whereby United acquired title to the property, they are barred from overthrowing that recorded title at this late date by the doctrines of laches and estoppel.[3]

I, therefore, would not reach the issue of whether the transfer from Withers to Briggs was in fraud of creditors.[4]

2. The title of a conveyance is not properly speaking a part of the instrument [see Miller v. Brugier, 176 La. 106, 145 So. 282 (1932)] and therefore if the effect of the instrument, regardless of what it is called, is to convey an estate in land to another, it is a deed. See Terrill v. Kentucky Block Cannel Coal Co., 290 Ky. 35, 160 S.W.2d 326 (1942); Duncan v. Mason, 239 Ky. 570, 39 S.W.2d 1006 (1931); 26 C.J.S. Deeds § 1, at 582 (1956).

3. With reference to these equitable defenses, we can take judicial notice that United incurred attorney's fees and costs involved in the execution sale and this litigation. It further relinquished its debt against Briggs. Thus, it substantially altered its position as a result of the inaction of Muller and Gransbury and the latter's erroneous representation of his claim. See Decker v. Hendricks, 97 Ariz. 36, 396 P.2d 609, 611 (1964) (discussion of laches and estoppel); California Cigarette Concessions, Inc. v. City of Los Angeles, 53 Cal.2d 865, 350 P.2d 715, 718 (1960) (estoppel); Harvey v. Whyte, 158 Cal.App.2d 685, 323 P.2d 162, 164 (1958) (laches); Kirkpatrick v. Tapo Oil Co., 144 Cal.App.2d 404, 301 P.2d 274, 280 (1956) (laches); Western Motor Rebuilders, Inc. v. Carlson, 138 Colo. 404, 335 P.2d 272, 280 (1959) (laches); Smith v. Krutar, 153 Mont. 325, 457 P.2d 459 (1969) (estoppel).

4. In determining whether Briggs was a purchaser for "valuable consideration" under the provisions of AS 34.40.100 which insulates such a purchaser from claims of transfers made with intent to defraud, I agree that the term "valuable consideration" should be construed in the same manner as the term "fair consideration" used in § 3 of the Uniform Fraudulent Conveyance Act, although that act has not been adopted in Alaska. See Blumenstein v. Phillips Insurance Center, Inc., 490 P.2d 1213, 1220 n. 8 (Alaska 1971), and language quoted from White v. NollMeyer, 151 Mont. 387, 443 P.2d 873, 883 (1968). However, I do not reach the issue of whether the trial court erred in finding that there was not "valuable consideration" in the Withers-Briggs' transaction.